Gulf, Colorado & Santa Fe Railway Company v.
E. J. Powell.

Decided January 26, 1901.

**1.—Railway Company—Negligence—Injury to Switchman.**

See evidence held to warrant verdict against the railway company for injury to a switchman by derailment of a switch engine through improper setting of the switch, and resulting from negligent failure of the foreman to observe that the handle bar of the switch was not securely fastened in its proper place.

**2.—Master and Servant—Assumed Risk—Contributing Cause.**

Where negligence on the part of the foreman contributes, along with the risk assumed by the servant, in causing the injuries to the servant, the master is liable, as injuries so brought about are not among the assumed risks of the servant's employment.

**3.—Same—Concurring Negligence of Third Party—Right of Action Over.**

The fact that negligence of a third party concurred with that of the master in causing the servant's injuries, would not confer upon the master a right of action against such third party.

**4.—Railway Company—Negligence as to Condition of Switch.**

A verdict was properly directed in favor of a codefendant company whose track and switch the defendant company was using, where the evidence showed that the derailment of the engine and consequent injury of plaintiff was due to failure of the defendant's employes to properly set the switch, and not to defects in the switch.

Appeal from Tarrant. Tried below before Hon. Irby Dunklin.

*J. W. Terry* and *West, Smith & Chapman,* for appellant.

*Carlock & Gillespie,* for appellee.

CONNER, Chief Justice.—We adopt from appellant's brief the following statement of the nature and result of this suit, viz.: "Appellee was injured by the derailment of the tank of a switch engine on which he was serving as switchman. He charges that the accident was due to improper adjustment of the switch, excessive speed, and absence of the fireman from the engine, whose duty it was to keep a lookout. The switch was the property of the Texas & Pacific Railway Company, over whose track the defendant's engine was passing. The defense was based substantially on the propositions that the absence of the fireman did not contribute to the accident; that it was the duty of plaintiff to look out for the switch; and that he was in the best position to perform that duty, and if he could not ascertain its improper adjustment, the defendant could not otherwise be negligent in failing to ascertain it; the speed of the engine was not excessive, and if so, did not contribute to the accident, and that if the speed of the engine was excessive, plaintiff had the power and authority to check it by signaling the engineer, and failing to do so, could not complain that the defendant, by some other agent, had not done so. Appellant made the Texas & Pacific Railway Company a party, and prayed that in the event judgment was rendered against it,

on the ground of any defect in the switch, that it would recover over against the Texas & Pacific. The court charged the jury to find a verdict in favor of the Texas & Pacific Railway Company. There was a verdict and judgment against appellant for the sum of $2500."

The questions made on this appeal arise principally out of the alleged insufficiency of the evidence to support the verdict and judgment, and to authorize the submission of the issues given in charge to the jury. We will not incumber the record by setting out the evidence in full. We think it sufficient to say that after a careful examination of the record, we have been unable to say, in the language of the assignments, that the evidence did not authorize the submission of the several issues given in the charge, or that the motion for new trial should have been granted for want of sufficient evidence to sustain the verdict and judgment in appellee's favor.

Briefly stated, the facts show that the engine in question was backing northward upon a switch track owned by the Texas & Pacific Railway Company to a point beyond the switch at which the derailment occurred. The engine crew proper consisted of a foreman, the engineer and fireman, and the appellee and one Smedley as switchman; that appellee was standing upon the foot board of the tank on the left hand side in the discharge of his duty; that the engineer was also located on the same side going north; that the switch-stand was on the opposite side of the track from the side on which appellee and the engineer were located. The evidence tended to show that it was the special duty of the foreman to see that the switches were all properly lined up, and in position for the safe passage of engines and cars; this also was included among the duties of the appellee as a switchman, and of the fireman. The evidence established the fact that the switch in question was in good order, but tended to show that the handle-bar with which the switch was turned, was, at least partially, out of the notch or "socket," as it is designated in the record, fixed to hold it in place. The evidence we think authorized the finding that the switch-bar had not been securely placed in its position, by reason of which the switch points became displaced and the tender derailed and appellee injured. The fireman was absent from his place of duty on the engine. Had he been in his place and looking, he would have been in better position to have seen whether the switch-bar was secure in its socket than either the engineer or appellee. Switch-stands are provided with what is termed a "target," or piece of tin about 1½ feet each way, one side of which is white and the other side red; in the present instance the white indicated the proper position of the switch for the main line and the red for the side track. The testimony tends to show that these targets during the day serve as the principal indication to engine crews of the condition of switches. The foreman of the crew testified that, in the discharge of his duty, he had gone along the track prior to the passage of the engine for the purpose of seeing that the switches were in position; that he passed along within forty feet of the switch in question; that the target showed white for the

main line (the line sought), and that the switch was secure—but the evidence, we think, warrants the inference that he was negligent in failing to see that the switch-bar was securely fastened. There was also evidence to the effect that the engine was running at a speed of fifteen miles an hour, contrary to an ordinance of the city of Fort Worth, whose jurisdiction extended over the place of the accident, restricting engines and cars to a speed not exceeding six miles an hour. Appellee observed that the switch-target so appeared as to indicate safety; he noticed nothing wrong with the switch or switch-point or handle-bar, but testified that, at the speed at which they were going and in the position in which he was located, he could not well determine whether the bar was securely fastened in its socket. The evidence also authorized the finding that, in the absence of the foreman, which was the case here, the speed of the engine was under the control of the engineer, and that appellee was not required, if indeed authorized, to signal him to slacken the speed unless he saw an obstruction, or had cause to stop to perform some work directed by the foreman.

As stated, we think the evidence tends to show that the handle-bar with which the switch was held in place was but partly or insecurely fixed in the "socket;" that by reason of the rapid approach of the engine the handle-bar, and consequently the switch-points, became displaced, by reason of which the tender was detailed and appellee injured as alleged; that the foreman, whose especial duty it was to see that switches were in condition for the safe passage of cars and engines, was guilty of negligence in failing to discover its condition and securely fasten in its place said handle-bar; and that such negligence of the foreman was a proximate, contributing cause of appellee's injuries.

The evidence on these issues being sufficient in our opinion to support the verdict and judgment in appellee's favor, the motion for new trial was properly overruled, notwithstanding the alleged insufficiency of the evidence on other issues to support such verdict.

We can not say from the evidence that within the knowledge of appellee there was such constant violation of the ordinance regulating the speed of engines as to cast upon him the risk of all injuries resulting therefrom, but if we assume that it was so, we think the negligence of the foreman was at least a contributing cause of the derailment and injury in question, and dangers and injuries so brought about were not among the assumed risks of appellee's service. Railway v. Hannig, 20 Texas Civ. App., 649; Railway v. Cummins, 106 U. S., 700. The jury in effect found that appellee was without contributory negligence in failing to discover the absence of the fireman and in the failure to signal the engineer to abate the speed of the engine, and on the whole we have failed to discover error for which the judgment in appellee's favor should be reversed.

Nor do we find error in the peremptory instruction in favor of the appellee, the Texas & Pacific Railway Company. There was no evidence to support a finding that the switch-points, stand or other connections

were defective, or that said railway company was guilty of negligence in failing to replace the handle-bar securely in its socket, or in failing to discover that the same had not been done. Appellant's agents assumed this duty, and the court limited the plaintiff's right to recover to the negligence of appellant alone. If appellant be guilty of negligence as alleged, and such negligence was a cause of the injury, the concurring negligence of the Texas & Pacific Railway Company, if any, confers upon appellant no right of action. Railway v. Naas, 94 Texas, 255, 59 S. W. Rep., 870.

There appearing no reversible error in the proceedings below, it is ordered that the judgment be in all things affirmed.

*Affirmed.*

Writ of error refused.